# COURT OF APPEALS OF TEXAS.

## TYLER TERM, 1882.

[No. 1356.]

### PRIEST JONES v. THE STATE.

1. BURDEN OF PROOF—CHARGE OF THE COURT.—The Penal Code, Article 51, provides that when "the facts have been proved which constitute the offense it devolves upon the accused to establish the facts or circumstances on which he relies to excuse or justify the prohibited act or omission." See the opinion of the court in the present case for an exposition of the import and purpose of this provision, and for an elucidation of the principles which determine whether it should or should not be given in charge to the jury. Note also the distinction drawn between the presumption of innocence and the *onus probandi* incumbent on the State, and observe the review of elementary and judicial authorities relevant to the provision of the Penal Code under consideration.

2. PRESUMPTION OF INNOCENCE.—Every person accused of crime is presumed to be innocent until his guilt is established by legal evidence to an extent which excludes all reasonable doubt of his guilt; and this presumption obtains in his behalf throughout the entire case, and never departs until his guilt is determined.

3. BURDEN OF PROOF.—The burden which rests on the State to overcome the presumption of innocence and establish the guilt of the accused by legal evidence beyond a reasonable doubt never shifts from the prosecution to the defense.

4. SAME—PRACTICE.—When the accused pleads "not guilty," and does not rely upon any matter as a defense which is separate and distinct from, and independent of, the facts constituting the offense, the burden of proof does not rest upon him to prove anything; and in such a case it is error to give in charge to the jury Article 51 of the Penal Code. See the opinion *in extenso* for examples, and for the rule of practice which obtains in such cases.

5. SAME—CHARGE OF THE COURT.—When the accused relies upon any substantive, distinct, separate and independent matter as a defense, which is outside of, and does not necessarily constitute a part of the act or transaction with which he is charged (such as the defense of insanity, nonage, license from the proper authority to do the act, relationship or the like), then it devolves upon him to establish such special and foreign matter, by a preponderance of evidence. It would not be error to instruct in such cases that the burden of proving such defenses devolved upon the accused.

A

6. SAME.—When the accused relies upon a defensive fact which is peculiarly within his knowledge, the burden rests upon him to prove it; and in such a case a charge to that effect is not error.

7. ASSAULT WITH INTENT TO MURDER—CHARGE OF THE COURT.—In a prosecution for an assault with intent to murder, to which self-defense was interposed under the plea of "not guilty," the court charged the jury in the language of Article 51 of the Penal Code, as follows: "You are further instructed that upon the trial of any criminal action, when the facts have been proved which constitute the offense, it devolves on the accused to establish the facts and circumstances on which he relies to excuse or justify the prohibited act." *Held*, error, for which the conviction must be set aside.

8. EVIDENCE held sufficient to sustain a conviction for assault with intent to murder.

APPEAL from the District Court of Smith. Tried below before the Hon. J. C. Robertson.

The indictment charged the appellant with an assault with intent to murder Elisha Young. The venue was laid in Smith county, Texas, and the offense was alleged to have been committed on the twenty-ninth day of October, 1881. He was found guilty upon his trial, and a term of five years in the penitentiary was assessed against him as punishment.

George White was introduced by the State, and testified that Elisha Young, the party injured, was his son. The defendant cut Elisha Young, at the witness's house, in Smith county, on the night of October 29, 1881. Elisha Young reached the witness's house, on his return from town, about supper time, and in a few moments the defendant came to the house. The witness, the defendant and Elisha sat by the fire in friendly conversation for some time, nothing transpiring during that time to indicate that the defendant entertained anger or hard feelings towards Elisha Young. Presently the defendant got up and started as if to go home. A few minutes later, Elisha got up, bade the witness good-night, and started to go to his home. When Elisha reached the door, the defendant, who was standing just outside the door, grabbed him, and stabbed him in four different places. From the effects of these wounds Elisha was confined to his bed for two or three weeks, unable to get about or to wait upon himself.

The witness knew no cause for the cutting. He did not see nor hear anything of an unfriendly nature between the parties, before or at the time of the cutting. Elisha had no knife or stick

in his hand, and the only weapon about his person was a short, single-bladed barlow knife, which was taken from his pocket, closed, after he was cut. All that was said at the time of the cutting was, "Priest 'has cut me." Elisha made no effort to fight. When the witness saw the cutting done so suddenly, and the blood streaming from Elisha's wounds, he was so astonished he could say nothing. The witness did not tell Judge White, before whom the complaint in this case was originally made, that Elisha had a knife in his hand at the time of the cutting, nor did he make such a statement at any time in Judge White's court. If the witness said anything about the knife at all, it was that Elisha had only a barlow, and that it was shut up in his pocket.

Elisha Young testified for the State that on the night of October 29, 1881, he was cut in four places by the defendant. He exhibited the scars to the jury. One. was a cut on the left side, about thirteen inches long, extending from near the back, around the left side to a point near the navel. A second cut was in the side, just above the first cut, and was about four inches long. These two cuts were each about a half inch wide. A third cut was just across and below the elbow, and was about four inches long and a quarter of an inch wide. The remaining cut was about three inches long, was under the chin and across the throat, and about a quarter of an inch in width. These wounds had all healed up.

The witness did not know why the defendant cut him. He had in no way molested the defendant on that occasion. The defendant simply "pitched into" the witness as the latter was descending the steps, and inflicted the last wound on the throat as the witness fell backwards into the door. While the parties were sitting in the house, the defendant conversed with the witness in an entirely friendly manner, and gave him no occasion to suspect that he was angry. The witness had never struck, or made an effort to injure the defendant. The witness had no thought of a difficulty when the defendant commenced cutting him. After inflicting the last wound, the defendant trotted off.

The witness had never had any "particular" difficulty with the defendant; but, a short time before this assault, he had some words with defendant's father about his stock getting into the field. No fight resulted between the witness and defendant's father, because of this dispute, but it engendered some feeling. The witness did not tell Mr. Willis Roberts on the day after the cutting, that he, the witness, was in fault, nor that on a previous

occasion he had whipped the defendant when he was passing through the witness's yard. He did not remember that he told Willis Roberts that this difficulty was the sequel to a previous one. The witness was so weakened by the loss of blood that he scarcely knew what he said or did for several days after the cutting. The witness did not, at his house or at his father's house, on the day after he was cut, tell Elias Jones that he was at fault about the difficulty. He did not tell Elias Jones that the defendant cut him while he was trying to cut or strike the defendant.

Jew Nesbit testified for the defense that Elisha Young, the defendant, and Elias Jones were at "outs" about stock. Elias Jones and the defendant were unfriendly toward Elisha Young because his mule got into their field a time or two. On the day before the cutting Elisha told the witness that he took a brush and struck the defendant and his mule on one occasion when the defendant was passing the field.

Elias Jones testified for the defense that he went to see Elisha Young on the next day after he was cut, and Young told him the difficulty in which he was wounded grew out of the quarrel which he and the defendant had about a cow and pony getting into a field, and that he, Young, was at fault. The witness heard George White say in Judge White's court that Elisha had his knife out "making at" the defendant when he was cut. The witness, who was the father of the defendant, lived two or three hundred yards from where the cutting took place. The defendant did not come home on the night of the cutting. He returned next morning about sun-up, and immediately, before breakfast, the witness sent him to town, about two and a half miles distant, to collect some money due the witness. It was on Sunday, and the witness did not tell him to wait and get his breakfast, nor did he tell him to get the money and leave the country. The witness and the defendant were both in town, and neither of them collected the money. The man who owed the witness told him to send in on Sunday morning and collect it. The witness had never before sent the defendant to collect money for him, and did so this time only because it was due.

Nancy Jones, the mother of the defendant, testified for the defense that the defendant returned home on the morning after the cutting, about sun-up. His nose was bleeding freely and his arm near the wrist was cut. The gash was about an inch and a half long and about an inch deep. It was a fresh cut and was still bleeding. His father sent the defendant to town at once, to col-

lect some money, and he left for that purpose before breakfast. The witness put scissors down his back to check the flow of blood from his nose. The witness on that day went to see Elisha Young and asked him how the cutting happened. He replied that it happened in a difficulty about the pony and cow getting into the field, and he said that he himself was at fault. The witness reiterated that the defendant's arm was very badly cut, and that his nose was bleeding when he returned home on the morning after the difficulty.

Lewis Jones, for the defense, testified that the defendant was his nephew. The witness heard George White say before Judge White that Elisha Young was "making at" the defendant when he was cut.

Willis Roberts testified for the defense that he raised both the defendant and Elisha Young. They were colored men, and belonged to the witness when they were slaves. The witness heard of the difficulty and went to see Elisha a day or two after he was cut. He asked Elisha about the affair, and Elisha told him that he and the defendant had had a previous difficulty, and that he had told the defendant that if he ever came about his place again he, Elisha, would hurt him, the defendant; that the defendant did come back, and in the difficulty which ensued he got hurt.

F. P. Rogers was called to the stand by the State. He testified that he was a constable and arrested the defendant about daylight on the morning after the cutting. A runner came to the witness and notified him that the defendant was on his way to town, and to look out for him. The witness procured a horse and followed the defendant as he was going west from town, and overtook and arrested him within about one mile. He was riding a mule, traveling in a trot and going towards home. The witness overhauled him as he was entering the woods near what was known as the Patterson place. The witness halted the defendant and demanded his name, which he would not give. On searching him the witness found a pocket-knife with a blade about one and a half inches long. It had been newly sharpened and was as keen as a razor. It had blood on it.

The defendant told the witness that Elisha Young had cut him on the arm, and showed the witness two cut places on his wrist, neither of which was fresh. One had healed up and scabbed over and the other was healing and scabbing over. Neither of these scratches had been made within a week. The witness was

positive that neither of them could have been made on the day or night before, or within the preceding five days. Defendant had no fresh cuts about his person.

Judge White was then called to the witness stand by the prosecution. He testified that the original complaint was sworn out before him on the second day after the cutting. On that day, which was Monday, the witness saw the defendant in charge of constable Rogers, and observed two small scratches on his wrist. They were scabbed over, and were at least a week old. The witness saw no fresh cut on his arm at all. George White made the complaint. He did not tell the witness that Elisha Young was in fault, or was "making at" the defendant with a knife when he was cut. If he said anything about Elisha having a knife out the witness did not hear it.

The grounds relied upon by the defendant in his motion for new trial were:

1. That the court failed to charge the jury fully as to the law of the case.

2. That the court erred in not fairly submitting to the jury the issue as to whether the defendant intended to kill the said Elisha Young at the time he inflicted the injury.

3. That the court erred in charging Article 51 of the Penal Code (quoting it).

4. That the verdict of the jury was contrary to the law and the evidence.

It was set out that the defendant failed to file this motion within two days after verdict, because the second day after the trial was Sunday.

This motion was overruled, and this appeal prosecuted.

*C. G. White*, for the appellant.

*H. Chilton*, Assistant Attorney General, for the State.

WILLSON, J. The defendant was convicted of an assault with intent to murder Elisha Young, and his punishment assessed at five years confinement in the penitentiary.

The evidence is amply sufficient to sustain the verdict. The charge of the court is clear, comprehensive, and applicable to the facts, and with the exception of one clause is entirely unobjectionable. The clause referred to is as follows: "You are further instructed that upon the trial of any criminal action,

when the facts have been proved which constitute the offense, it devolves on the accused to establish the facts and circumstances on which he relies to excuse or justify the prohibited act." This clause is an exact copy of Article 51 of the Penal Code. It was excepted to by the defendant at the time it was given in charge to the jury, and is now presented to us in a bill of exceptions, and insisted upon as an error fatal to the conviction.

It has been suggested by the Assistant Attorney General, in his argument in this case, that notwithstanding the question now presented has, in a number of cases, been discussed and ruled upon by our Supreme Court and by this court, there still exists, in the minds of many learned judges and lawyers in this State, doubt and confusion as to the correct rule upon the subject; that is, as to the class of cases in which it would be proper to give this provision of the Code in charge to the jury. And he suggests that in our opinion in this case we elucidate more fully than has yet been done the proper office of this provision. We confess that to our minds the subject is by no means free from difficulty, and that the statute, and the decisions upon it, are not as plain and satisfactory as they should be. We will review at some length the authorities bearing upon the question, and in this way endeavor to arrive at a correct and definite conclusion as to the proper use of this article of the Code in instructions to the jury.

It is a cardinal principle of criminal law, that every person accused of crime is presumed to be innocent, until his guilt is established by legal evidence, to the exclusion of any reasonable doubt. This principle has been incorporated into our criminal codes in two separate articles, which, although different in words, mean precisely the same thing. (Penal Code, Art. 11; Code Cr. Proc., Art. 727.) This presumption of innocence is with the accused throughout the whole case, from its commencement to its final determination. (1 Bishop's Cr. Proc., 1104; Wharton's Cr. Ev., 330.) The effect of this legal presumption of innocence is to place the burden of proving the guilt of the accused upon the prosecution. The fact of guilt having been established to the exclusion of any reasonable doubt, the prosecution has made out its case, and this case will overcome the presumption of innocence, and produce the conviction of the accused; but the presumption of innocence never departs from the case until the conviction is finally determined.

But there is a difference between this "presumption of inno-
cence" and the "burden of proof." Mr. Wharton, in his excel-
lent work on Criminal Evidence, in discussing this difference,
says: "We must remember that the rule imposing the burden
of proof on the party advancing a proposition is a very different
thing from the presumption of innocence. A defendant has the
presumption of innocence with him through the whole case.
The advantage he derives, however, from the fact that the bur-
den is on the prosecution to make out the points it advances is
only temporary. As soon as this is done to such an effect as to
sustain a verdict of guilty, then, should the proof close at that
point, the case goes to the jury free from any presumptions aris-
ing from the prior imposition of this burden. In other words,
the rule requiring the *actor* to take on him the burden of proof is
one merely of practice, adopted for the proper development of
the case, and ceases to operate when the evidence is in. The
rule requiring guilt to be made out beyond reasonable doubt is
a fundamental sanction of the law, applicable at all stages of a
trial. The first rule concerns the *order*, the second the *weight* of
testimony." (Whart. Cr. Ev., 322.) Again, he says: "But 'bur-
den of proof' is a very different thing from the presumption of
innocence. The first, to state once more this important distinc-
tion, is a formal rule confined to determining the order in which
the proofs are to be brought forward; a rule which ceases to ap-
ply as soon as a party has introduced proof sufficient to entitle
him to a verdict. The second is a substantial rule, operating
during the whole trial, and continuing to operate until the case
is finally determined." (Id., 330.) The distinction here shown
by this author between the "presumption of innocence" and the
"burden of proof" is, we think, a correct one, and when kept in
mind and properly applied, will solve some of the difficulties
which beset the question we are considering.

We will now refer to the cases decided in the courts of our
own State, which bear upon this question before us:

In *Henderson* v. *The State*, 12 Texas, 525, which was a prose-
cution for an assault with intent to murder, the defendant ad-
mitted the assault, but undertook to justify it by proof that the
person assaulted was at the time in the act of setting fire to a
house of the defendant, in the night time, etc. The court, in
alluding to this attempted justification, says: "It was incum-
bent on the defendant, seeking to justify the use of such vio-
lence in defense of his person, habitation or property, to make

out satisfactorily in evidence the facts on which he relied to jus-
tify or extenuate.   From such acts of violence the law presumes
malice; and it devolved on the defendant to repel this legal in-
ference, by showing circumstances of justification, excuse or
extenuation.   If such circumstances existed, but were not sus-
ceptible of proof, that was his misfortune.   The law demands
evidence, and will not rest its conclusions on conjecture." In
considering this case it is to be noted: 1. That the court is not
discussing a charge to the jury embodying the rule stated, but
is passing upon the evidence in the case. 2. This decision was
prior to the adoption of our Penal Code, and does not, therefore,
bear directly upon the question before us.   It, however, an-
nounces the same principle or rule of practice enacted in the
article under discussion, and is valuable in this case for the pur-
pose of showing that Article 51 of the Penal Code is simply an
enunciation of the common law.

The case of *Belverman* v. *The State*, 16 Texas, 130, was a prose-
cution for cutting and carrying away timber off land not de-
fendant's own.   It was held that it devolved on the State to
prove that the land was not the defendant's own, but that *prima
facie* proof of this fact was all that was required, to throw on
the defendant the *onus* of proving the license of the owner or a
superior right or title in himself.   Here, the State is required to
prove a *negative*,—that the land did not belong to the defendant.
Furthermore, if the land belonged to the defendant, or if he had a
license from the owner to cut the timber from it, these facts were
peculiarly within the knowledge of the defendant.   In such a
case, at common law, when the prosecution had established a
*prima facie* case of guilt, it devolved upon the defendant the
burden of proving the special matter which would exonerate
him.   (1 Greenl. Ev., 78–79.)

*Hall* v. *The State*, decided at Galveston in 1875, but which has
never been reported, is referred to and its purport explained in
*Leonard* v. *The State*, 7 Texas Ct. App., 417.   Judge Clark, who
delivered the opinion in the Leonard case, in referring to the
Hall case, says:   "The defendant was indicted for assault with
intent to murder, and the court instructed the jury that 'the
burden of proof is on the defendant to show the facts and cir-
cumstances which would excuse or justify the shooting; that,
the shooting being established, the burden of proof is upon the
defendant to show the sudden passion or adequate cause which
would reduce the offense below the grade of an assault with in-

tent to murder.' This portion of the charge was objected to, because it relieved the State from the necessity of proving that the shooting was unlawful, and done with malice aforethought, express or implied, and threw upon the defendant the burden of proving his innocence, instead of the burden of meeting a *prima facie* case of guilt as charged. The court held that the charge, as a whole, did not infract the law, though perhaps the jury may have been misled by the context. But they expressly declined to rest the decision upon this ground, and the judgment was reversed for another error." Judge Clark then quotes from the Hall case the following language: "The principle is, that although the defendant must establish the facts on which he relies to excuse or justify his acts, when such excuse or justification does not arise out of the evidence against him, yet the burden of proof is not on him in the sense it is understood to rest on a defendant in a civil case;" and, in concluding his remarks upon the Hall case, says that "subsequent decisions have in no manner qualified this case." We have not the Hall case before us, as it has never been reported, but we take it for granted that the learned and accurate judge has correctly stated it. Judge Clark in support of his declaration that subsequent decisions have in no manner qualified the Hall case, refers to *Perry* v. *The State*, 44 Texas, 473; *Brown* v. *The State*, 4 Texas Ct. App., 275; and *Ake* v. *The State*, 6 Texas Ct. App., 398; and we will now proceed to examine those cases.

In *Perry* v. *The State* the defendant was charged with murder. The court charged the jury that "the law implies malice in case of unlawful killing by means calculated to produce death, and in such case the burden of proof is on the defendant, if he would reduce the offense to a less grade than murder in the second degree." Justice Gould, in discussing this charge, says:

"That part of the charge which speaks of the burden of proof being on the defendant is not strictly correct. In the case of *Hall* v. *The State*, Galveston Term, 1875, this subject was fully considered, and after a careful examination of the statutory provisions bearing upon it, and a review of the leading authorities, the conclusion is arrived at that the burden of proof is not on the defendant in a criminal case in the sense in which it is understood to rest on the defendant in a civil suit. In a criminal prosecution, where the accused relies on the plea of not guilty, admitting nothing, the *onus* is on the State to overcome the legal presumption of his innocence, and the question of his guilt

is to be decided from the whole evidence, without pausing to inquire whether it was introduced by him or the State." The charge we have quoted above was held to be erroneous under the circumstances of that case.

In *Brown* v. *The State* the prosecution was for murder, and the court charged as follows: "When the fact of killing has been clearly established, and it has not been shown to be the result of accident, or to have been done under such circumstances as will in law mitigate, excuse or justify the act, the law in such case implies malice, without further proof, and makes such killing murder." This charge was held to be correct, and the court expressly distinguishes it from the charge given in Perry's case, and says of the charge in that case, "It was that portion of the instruction in Perry's case which told the jury that the burden of proof is on the defendant, etc., which the court held erroneous." We draw the inference from this language that if the charge in Brown's case had instructed the jury that the burden of proof was upon the defendant to prove that the killing was accidental or done under such circumstances as would mitigate, etc., the court would have held the charge erroneous.

In *Ake* v. *The State* the defendant was prosecuted for rape. In order to escape capital punishment he contended that the offense was committed before he arrived at the age of seventeen years. It was strenuously and ingeniously argued by his counsel that it devolved upon the State to prove beyond a reasonable doubt that he had arrived at the age of seventeen years when the act was committed. But the court held otherwise, and, after discussing the authorities upon the point, concludes its opinion as follows: "It is unnecessary to illustrate the question further. The instances cited show that the maxim that the burden of proof in criminal cases never shifts from the State means only that it never shifts in so far as it is necessary to make out the specific case of murder or rape, or any other offense charged in the indictment, by establishing the *corpus delicti*, and the constituent elements of the crime. When distinct, substantive matter is relied upon by the defendant to exempt him from punishment and absolve him from liability, then that is matter foreign to the issue as made by the State in her charge against him, and the burden of proving it, in reason, common sense and law, should be upon the defendant."

We do not entirely agree with Judge Clark in his conclusion that the Hall case has in no manner been qualified by the three

subsequent cases we have quoted from. If it has not been quali-
fied, we certainly think it has not been fully sustained by those
decisions. In *Perry* v. *The State* a similar charge to the one sus-
tained in Hall's case was held to be erroneous; and in *Brown* v.
*The State* the decision in the Perry case is approved; and in *Ake*
v. *The State* the ruling is announced that it is when distinct sub-
stantive matter, foreign to the issue as made by the State, is relied
upon by the defendant to exempt him from punishment, that it
devolves upon him to prove such matter.

In *Leonard* v. *The State*, 7 Texas Ct. App., 417, the defendant
was prosecuted for embezzlement, and the judge gave in charge
to the jury Article 51 of the Penal Code, as given in the case at
bar. The charge, however, was not excepted to at the time. The
court, Judge Winkler delivering the opinion, says: "This charge
may not be objectionable in view of the seeming attempt to prove
that the cotton of the bank was on the yard of the defendant at
the time he is shown to have left Fort Worth. But, whilst this
may be law in every case, we cannot conclude that it is an ap-
propriate instruction to give to the jury in any and every case.
The legal principle enunciated would be inapplicable as a charge
in an ordinary case where a defendant has pleaded not guilty.
In such a case the general rule is that the burden of proof does
not shift from the State to the defendant, and generally it would
be error to so charge." There was a motion for a re-hearing in
this case, and Judge Clark, in delivering the opinion of the court
refusing the motion, uses the following language in regard to
the charge referred to: "The law starts the trial with the pre-
sumption of innocence in favor of the prisoner, which continues
until a verdict of guilty; but the State is not called upon to do
more than to prove its own case. It is only required to prove
the facts which constitute the offense, and rest its case. If
there be no further evidence the case goes to the jury with the
evidence for the State, which must be tested by them, on their
retirement, by legal rules as to its sufficiency, including the rule
as to reasonable doubt. If evidence be introduced by the de-
fendant, tending to establish facts or circumstances upon which
he may rely to excuse or justify the prohibited act or omission,
then the question of his guilt is to be decided on the whole evi-
dence, without pausing to inquire whether it was introduced by
him or the State." And in concluding the opinion, the learned
judge explains the reason why the charge was held not to be
error. He says: "Without undertaking to enumerate cases

wherein such an instruction might be objectionable, we are of opinion that this case not only justified, but would seem to have required it, as the whereabouts and disposition of the cotton were wholly within the knowledge of appellant; and, after the establishment of the *prima facie* case of guilt as above indicated, it peculiarly devolved upon him to establish his excuse or justification."

In *Guffee* v. *The State,* 8 Texas Ct. App., 187, which was a prosecution for murder, the court instructed the jury as follows: "When an unlawful killing is clearly shown to have been done, it is for the defendant to show facts which mitigate or reduce the offense below murder. Where this is not done, the law imputes malice to such unlawful killing." In passing upon this charge the court says: "It is clearly erroneous in so far as it shifts the burden upon the defendant to establish mitigating facts and circumstances. It is never incumbent upon a defendant on trial in a criminal prosecution to show any facts in mitigation, unless such mitigation fails to appear in the evidence against him, and the facts established by the State show beyond a reasonable doubt a *prima facie* case of guilt." The charge was held error.

In *Ainsworth* v. *The State,* 8 Texas Ct .App., 532, it is said: "While in some exceptional cases, dependent upon a peculiar state of facts, the statute relating to the burden of proof may with propriety be given to the jury, yet in a vast majority of cases such a charge, although the law, ought not to be given to a jury, and, if given, will constitute serious error;" and in that case, which was a prosecution for murder, and in which the evidence was conflicting, the charge was held to be erroneous.

In *Dubose* v. *The State,* 10 Texas Ct. App., 230, which was a prosecution for murder, the trial court in substance embraced in its charge Article 51 of the Penal Code. In holding this charge to be erroneous, the court says: "The correct principle is that when the defendant relies on no separate, distinct and independent fact, but confines his defense to the original transaction on which the charge is founded, with its accompanying circumstances, the burden of proof continues throughout with the prosecution." In concluding the opinion it is further remarked: "We will not discuss the question as to whether this or a similar charge can properly be given in any case, except in those in which an independent, separate and distinct matter is inter-

posed.   The writer (Judge Hurt) is of the opinion that it is not permissible in any case, unless such matter is relied on."

We have now referred to the leading decisions of the courts of this State, which either directly or remotely discuss the question before us.   We have thought it proper to do this somewhat in detail and at length, in order to present in one case the present *status* of the decisions, and to deduce from them as definitely as we can the correct rules upon the subject.   An investigation of these decisions, and deliberation upon them, have brought us to the following conclusions, viz.:

First.  We cannot approve the decision in the Hall case, as it is reported by Judge Clark in the Leonard case.  We think the charge objected to in that case was clearly erroneous, and that the decision, in so far as it held the charge to be unobjectionable, is not sustained by authority or reason.

Second.  We think the correct doctrine is enunciated in the cases of *Ake* v. *The State*, and *Dubose* v. *The State, supra*, and we will here state as succinctly and clearly as we can our understanding of the rules relating to the presumption of innocence and the burden of proof governing in criminal trials.

1.  Every person accused of crime is presumed to be innocent until his guilt is established by legal evidence to that extent which excludes any reasonable doubt of his guilt.

2.  This legal presumption of innocence continues in favor of the prisoner throughout the whole case.

3.  The burden of proof to meet and overthrow this presumption of innocence by establishing by legal evidence the guilt of the accused, beyond a reasonable doubt, rests upon the State.

4.  This burden of proof never shifts from the State upon the defendant in the sense in which it is understood to shift upon a party in a civil suit.

5.  When the defendant pleads "not guilty," and does not rely upon any matter as a defense which is separate and distinct from, and independent of, the facts constituting the offense, the burden of proof does not rest upon him to prove anything, and in such cases it would be error to give in charge to the jury Article 51 of the Penal Code.   Thus, if the defendant is accused of murder, or of an assault, and pleads not guilty to the charge, the burden of proof is not upon him to prove self-defense, or accident, or want of evil intent, or any other defensive fact which is immediately connected with, and constitutes a part of the transaction, and which is not peculiarly within the knowledge of the

defendant. This is so, because the burden of proof is upon the State to prove that the homicide, or the alleged assault, was unlawful, intentional, and committed with the necessary criminal intent; and until this proof is made to the exclusion of a reasonable doubt the defendant is shielded by the presumption of innocence, and is not required to prove anything. But suppose in such case his guilt is established in all essential particulars beyond any reasonable doubt, does the burden of proof then fall upon him to show justification or excuse for the act? How can he justify or excuse a murder? Murder is neither justifiable nor excusable. He can introduce evidence in rebuttal of the State's case, and break down and destroy the case made against him by the State, and thus acquit himself of the charge; but in doing this he is not justifying or excusing the act, but is combatting the issue of guilt made against him by the State.

6. But, when the defendant relies upon any substantive, distinct, separate and independent matter as a defense, which is outside of, and does not necessarily constitute a part of the act or transaction with which he is charged, such as the defense of insanity, nonage, license from proper authority to do the act, relationship, or the like, then it devolves upon him to establish such special and foreign matter by a preponderance of evidence.

7. And, when the defendant relies upon a defensive fact which is peculiarily within his knowledge, the burden rests upon him to prove it, as in the Leonard case, where the whereabouts of the cotton embezzled was peculiarly within his knowledge. Thus, where a defendant claims that he acted under necessity, viz., under command of a superior officer during war, or under compulsion of any kind, the burden is on him to prove it. So in case the defendant relies upon a license to do the act, and when the license is particularly within his knowledge, the burden is upon him to prove it. (Whart. Cr. Ev., 335–342; *Ake* v. *The State,* 6 Texas Ct. App., 398.)

In cases of the class mentioned in subdivisions 6 and 7, we do not think it would be error for the court to instruct the jury that the burden of proving such defenses devolved upon the defendant. The charge of the court complained of in this case we think was error, and, having been excepted to at the time, we have no discretion to consider its probable effect upon the verdict, but must reverse the judgment and remand the case for a new trial. (Code Cr. Pro., 685.)

*Reversed and remanded.*

Opinion delivered October 11, 1882.